## Henry Vogt Mach. Co. v. Mercer et al.

June 18, 1948.

Rehearing denied October 5, 1948.

54

Charles Leibson for appellant.

E. P. Sawyer for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On June 12, 1946, the appellee, Rodney Mercer, was in the employ of the appellant, Henry Vogt Machine Co. His work was that of operating a turret lathe which is a machine to fit parts of cast iron to other machinery which involved the boring of holes and other fitting preparations. He had been engaged in that work for some time and just before quitting time at 4:30 P. M. of that day he felt a slight pain and burning of his left eye which inflamed it somewhat and caused it to water. A fellow workman observed it and saw its condition as described. Appellee went to his boarding house where other boarders saw it in the same condition, and one of his room mates, as well as Mercer himself, testified that the latter slept very little throughout the night and was complaining of his eye.

The next morning Mercer returned to the machine shop and went to the first aid office located therein. The nurse in charge examined his eye and directed him to consult Dr. Maupin, the employer's eye specialist. At that time the doctor removed a small metallic object from the eyeball and instructed Mercer to return if he experienced further trouble. The pain did not cease and appellee returned to the doctor the next morning and was placed in a hospital wherein the eyeball was scraped and other treatment administered. Shortly thereafter the doctor removed the eye. Later a glass eye was procured and inserted.

In the following September Mercer filed with the Workmen's Compensation Board his application for adjustment of claim and on the following November 21st a hearing was had before a referee at which oral testimony of applicant was heard together with other witnesses in his behalf, but neither the testimony of Dr. Maupin nor that of the nurse was taken by either party although it appears from the record, made before the Board, that at one stage of the hearing time was given

within which to take the deposition of Dr. Maupin who was ill at that time. Later further time was given for the same purpose, but his deposition was never taken. In the meantime it was stipulated between the parties that each party had accepted the provisions of our Workmen's Compensation Act and were operating thereunder on June 12, 1946; that claimant gave due notice of his alleged accident to his employer within the proper time, and "1. That on the morning of June 13, 1946 Rodney Mercer reported to the first aid office of the Henry Vogt Machine Co. and was advised by the first aid attendant to see Dr. Charles C. Maupin, the designated company physician, 852 Starks Building, Louisville, Kentucky. 2. That accordingly on the aforesaid date Dr. Maupin treated the injured eye ball heretofore referred to in the depositions, and removed therefrom a small metallic object. 3. That Rodney Mercer after further treatment by Dr. Maupin was sent to the hospital whereupon and within less than a week after June 13, 1946 Dr. Maupin removed Mercer's left eye ball."

The referee found that applicant was entitled to be compensated "to the extent of 50% permanent partial disability to his body as a whole" which, based upon the wages the applicant was receiving at the time he sustained his injury, was $6 per week for a period of 335 weeks beginning June 12, 1946. Application was then made by the employer for a hearing before the Full Board which was had, and it confirmed the referee's recommendations. Appellant then filed a petition in the Jefferson circuit court for a review of the Board's award resulting in a judgment confirming the report of the Board, and from that judgment this appeal is prosecuted.

Counsel for appellant in stating the grounds upon which he relies for a reversal of the judgment appealed from argues (1) that under the evidence no compensation should have been awarded and the application of appellee should have been dismissed; (2) if mistaken in that argument then the judgment is erroneous because "there is no medical proof whatever upon which to base an award of 50% to the man as a whole," in that there was no proof of traumatic injury, and (3) that the award should have been made under the provisions of subsection (20) of section 342.105, instead of under sec-

tion 342.100, partially repeated in section 342.110. We will now proceed to determine the three grounds urged by counsel for a reversal of the judgment.

It is manifestly apparent that there is no support whatever sustaining ground (1), and the stipulation supra saying ''That accordingly on the aforesaid date (June 13, 1946) Dr. Maupin treated the injured eyeball heretofore referred to in the deposition, and removed therefrom a small metallic object'' effectually disposes of ground (2). (Our parenthesis.)

Section 342.105, KRS, schedules 20 specific injuries to the body and fixes a specific amount as compensation for each of them, the 20th one being ''for the total and permanent loss of *the sight* of an eye, 65 percent of the average weekly wages during 100 weeks.'' (Our emphasis) That section is sec. 4899 of Carroll's 1936 Kentucky Statutes and in that, and prior publications since the enactment of our compensation act, there then followed in that same section what is now section 342.110 of KRS, which says in part:

''In all other cases of permanent partial disability, including any disfigurement which will impair the future usefulness or occupational opportunities of the injured employe, compensation shall be determined according to the percentage of disability, taking into account, among other things, any previous disability, the nature of the physical injury or disfigurement, the occupation of the injured employe and age at the time of injury. In no event shall compensation for an injury to a member exceed the amount allowable for the loss of such member.''

The last sentence therein saying: ''In no event shall compensation for an injury to a member exceed the amount allowable for the loss of such member'' was not in the statute prior to the enactment of Chapter 37 of the Acts of 1946, the inserted amendment being section 6 of that Chapter. It became effective on June 19, 1946, seven days after appellee sustained his injury, at which time appellee's rights under the amended Act vested. Therefore, the amendment does not apply to him.

In the case of Nelson v. Ky. River Stone and Sand

Co., 182 Ky. 317, 206 S. W. 473, 475, the injured servant, John T. Nelson, sustained an injury to one of his eyes finally resulting in its complete removal. The compensation board awarded only the scheduled rate for the mere permanent loss of the *"sight* of an eye" which the circuit court on petition for review affirmed. On appeal to this court we reversed both the Board and the circuit court in interpreting and applying the sections of the statute supra and said:

"His (claimant's) injury therefore was greater than the mere loss of the sight of the eye. That being true, his case does not fall within the schedule making compensation solely for the loss of the sight of an eye, but falls within the general provision, supra, awarding compensation 'in all other cases of permanent partial disability,' etc." (Our parenthesis)

A petition for rehearing was filed in that case which was overruled by this court by an order appearing in the same styled case in 183 Ky. 583, 209 S. W. 506. More recently there was brought to this court the case of Aetna Casualty & Surety Co. v. Petty et al., 282 Ky. 716, 140 S. W. 2d 397, 402, in which the identical accident we have here was involved, i. e., the loss of the sight of an eye, later resulting in its entire removal. The Board allowed compensation, not merely for the loss of the *sight* of an eye, but for permanent partial disability resulting from the entire removal of the eye. The circuit court affirmed that award, and on appeal to this court we affirmed that judgment, and in doing so said:

"The board's award of compensation here made appellee under the provisions of section 4899, Kentucky Statutes, was for a larger amount than that provided specifically for the 'loss of the sight of an eye,' being based upon the further provision of the act that an allowance of compensation might also be made the injured claimant in cases of permanent partial disability, 'including any disfigurement which will impair the future usefulness or occupational opportunities of the injured employee.' "

Appellee testified that he was rendered unable to prosecute the work in which he was engaged at the time of the accident with the sight of only one eye. With the

eyeball completely removed and substituted with a false one he could not move it in the socket from which the eyeball was taken. It would therefore remain stationary, whilst if he lost merely the sight of the eye an artificial fitting covering the eyeball could be obtained of the same coloring of the natural eye which would be movable as a natural one. Other additional consequences over and above the loss of the mere *sight* of the eye together with those mentioned are sufficient, we conclude, to bring the case within section 342.110 of KRS as it was before the 1946 amendment.

We deem it unnecessary to further discuss the facts or the law applicable thereto, since it is apparent from the foregoing domestic cases that the judgment of the court herein affirming the award was and is correct.

Wherefore, it is affirmed.